UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAWN KRISTI DICKEN,

     Petitioner,                         Civil No. 2:19-CV-11676
                                            Hon. Denise Page Hood

v.                                       Chief United States District Judge

SHAWN BREWER,

     Respondent,

_____              /

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

Shawn Kristi Dicken, ("Petitioner"), confined at the Huron Valley Women's Correctional Facility in Ypsilanti, Michigan, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 through her attorney F. Randall Karfonta. Petitioner challenges her conviction for conducting a criminal enterprise, Mich. Comp. Laws § 750.159i(1); embezzlement from a vulnerable adult, $50,000 or more but less than $100,000, Mich. Comp. Laws § 750.174a(6)(a); and seven counts of obtaining money by false pretenses, $1,000 or more but less than $20,000, Mich. Comp. Laws § 750.218(4)(a). Petitioner was sentenced to concurrent prison terms of 140 months to 20 years for the criminal enterprise conviction, 23 months to 5 years for each false pretenses conviction, and 71

months to 15 years for the embezzlement conviction. For the reasons that follow, the petition for writ of habeas corpus is **DENIED WITH PREJUDICE.**

## I. Background

Petitioner was convicted following a jury trial in the Midland County Circuit Court. This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion affirming her conviction, since they are presumed correct on habeas review. *See Wagner v. Smith*, 581 F. 3d 410, 413 (6th Cir. 2009):

> This case resulted from allegations that defendant, a registered representative or broker who worked for the Diversified Group, placed the funds of many clients into a risky limited partnership investment in which they lost substantial portions of their principal. The prosecutor asserted that defendant did so in order to obtain commissions and that, to convince her clients to enter into these risky investments, she misled them as to the risk to their principal and the liquidity of the investment. In addition, several of defendant's clients testified that their signatures on various documents had been forged.

*People v. Dicken*, No. 322998, 2016 WL 146031, at * 1 (Mich. Ct. App. Jan. 12, 2016).

The Michigan Court of Appeals affirmed petitioner's convictions and sentences for her embezzlement and false-pretenses convictions, but remanded to the trial court for further proceedings regarding the reasonableness of the above the guidelines sentence for the criminal-enterprise conviction. *Id.*

Petitioner filed an application for leave to appeal in the Michigan Supreme Court. The Michigan Supreme Court remanded the case back to the Court of

Appeals to consider the proportionality of petitioner's criminal-enterprise sentence, but otherwise denied the application. *People v. Dicken,* 501 Mich. 904, 902 N.W.2d 604 (2017).

On remand, the Michigan Court of Appeals affirmed petitioner's sentence for criminal enterprise, determining that it was proportionate based on the trial court's reasons for the departure from the sentencing guidelines. *People v. Dicken*, No. 322998, 2018 WL 632986 (Mich. Ct. App. Jan. 30, 2018); *lv. den*. 502 Mich. 904, 913 N. W. 2d 325 (2018).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. In a fraud case where the issue was Defendant's disclosure to clients and unlawful and illegal intent, Defendant was denied fundamentally fair discovery of the investigation of the business entities in the case including a clearly intentionally and important *Brady v Maryland* violation.

II. Improper expert opinion as to evidence that "is not a defense" and opinion as to the meaning of federal statu[t]es and regulations is plain error[.]

III. Recordings of Shawn Dicken's testimony before the FINRA state investigative agency are required evidence showing her lack of intent to defraud.

IV. Where the charge is embezzlement from a vulnerable adult, prosecutorial arguments and evidence that the power of attorney in the case was the equivalent of legal incapacity denied Defendant a fair trial and due process of law.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

The Michigan Court of Appeals reviewed and rejected a portion of petitioner's first and second claims and her fourth claim under a plain error standard on the ground that petitioner failed to preserve these claims as a constitutional issue at the trial court level. The AEDPA deference applies to any underlying plain-error analysis of a procedurally defaulted claim. *See Stewart v. Trierweiler*, 867 F.3d 633, 638(6th Cir. 2017). [1]

## III. DISCUSSION

### A. Claim # 1. The discovery claim.

Petitioner first argues that she is entitled to habeas relief because the prosecutor violated M.C.R. 6.201(B) and *Brady v. Maryland*, 373 U.S. 83 (1963)

---

[1] Respondent urges this Court deny these claims on the ground that they are procedurally defaulted because petitioner failed to object at trial. Procedural default is not a jurisdictional bar to review of a habeas petition the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir. 2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. The procedural bar issues here are complicated. Petitioner does appear to have attempted to preserve her first claim alleging a violation of *Brady v. Maryland* several times at the trial court level and also may have attempted to object to the prosecutorial misconduct issue raised in petitioner's fourth claim in a motion for judgment of acquittal. When a state court erroneously applies a procedural bar that has no foundation in either the record or under state law, a federal court need not honor that procedural bar. *See Walker v. Engle,* 703 F. 2d 959, 967 (6th Cir. 1983). Petitioner also argues that counsel was ineffective for failing to object to a portion of the second claim and for failing to properly preserve the fourth claim. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claims, it would be easier to consider the merits of the claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

by failing to turn over to the defense materials that the prosecutor had in its possession regarding other Diversified Group employees, material obtained pursuant to a search warrant executed at a credit union for Triton Commercial Lending, a separate company owned by petitioner, and evidence regarding the operation of Diversified Group by a receiver.

It is well-settled that there is no general constitutional right to discovery in a criminal case. *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)(denying due process claim of a defendant who was convicted with aid of surprise testimony from an accomplice who was an undercover agent); *United States v. Presser*, 844 F. 2d 1275, 1281 (6th Cir.1988)(citing *Weatherford*). A claim that a prosecutor violated state discovery rules is not cognizable in federal habeas review, because it is not a constitutional violation. *See Lorraine v. Coyle,* 291 F. 3d 416, 441 (6th Cir. 2002). Petitioner would not be entitled to habeas relief because the prosecutor violated M.C.R. 6.201 or some other Michigan rules regarding discovery.

It is true that suppression by the prosecution of evidence favorable to the defendant upon request violates due process, where the evidence is material to either guilt or punishment of the defendant. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Whether the prosecution acted in good or bad faith is not considered in the determination. Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would

have been different. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 683 (1985). In *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999), the Supreme Court articulated three components or essential elements of a *Brady* claim: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. "Prejudice (or materiality) in the *Brady* context is a difficult test to meet." *Jamison v. Collins*, 291 F. 3d 380, 388 (6th Cir. 2002).

The Michigan Court of Appeals rejected petitioner's *Brady* claim:

> Defendant states only that the requested materials might have contained evidence favorable to her. She gives no specific examples of information that was contained in these materials that might have assisted in her defense, nor did she request the trial court to conduct an in camera inspection. To be subject to discovery under *Brady*, evidence must be favorable to the defense and material. [*People v.*] *Chenault*, 495 Mich. [142] at 150, 845 N.W.2d 731 [2013]. "Evidence is favorable to the defense when it is either exculpatory or impeaching." *Id*. Evidence is material if "'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id*., quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). The mere possibility that evidence might be helpful is not sufficient to establish materiality. *United States v. Agurs*, 427 U.S. 97, 109–110, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Because defendant's mere contention that the requested materials might have contained favorable evidence is insufficient to establish that the evidence she sought was material, defendant has not established a *Brady* violation.

*People v. Dicken*, 2016 WL 146031, at * 2.

Petitioner is not entitled to habeas relief because she failed to show that any of this material was exculpatory. A habeas petitioner bears the burden of showing the prosecution suppressed exculpatory evidence. *See Bell v. Howes*, 703 F.3d 848, 853 (6th Cir. 2012). Allegations that are merely conclusory or which are purely speculative cannot support a *Brady* claim. *Burns v. Lafler,* 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004). "[M]ere speculation that a government file may contain *Brady* material is not sufficient" to prove a due-process violation. *United States v. Driscoll*, 970 F. 2d 1472, 1482 (6th Cir.1992), *abrogated on other grounds by Hampton v. United States*, 191 F.3d 695 (6th Cir.1999). Petitioner has failed to show that any of this evidence exculpated her of this crime. Petitioner is therefore not entitled to habeas relief on her *Brady* claim. *Burns,* 328 F. Supp. 2d at 724.

Petitioner is correct that "inadmissible material might nonetheless be considered 'material under *Brady* if it would 'lead directly' to admissible evidence.'" *Barton v. Warden, S. Ohio Corr. Facility*, 786 F.3d 450, 465 (6th Cir. 2015). However, "A court's determination that inadmissible evidence might lead to the discovery of evidence admissible at trial may not rest on 'mere speculation.'" *United States v. Ekiyor*, 89 F. Supp. 3d 928, 932 (E.D. Mich. 2015)(citing *Wood v. Bartholomew*, 516 U.S. 1, 6 (1995); *Wogenstahl v. Mitchell*, 668 F.3d 307, 325 n. 3 (6th Cir. 2012)). Petitioner only speculates that any of this

evidence would have lead to evidence that could have exculpated her of these crimes.

The only specific evidence that petitioner cites involves the alleged forging of signatures. Petitioner argues that Scott Bartlett was the person who forged signatures, not petitioner, based on interviews by Special Agent Peter Ackerly with Jessica Burch and Scott Bartlett.

Petitioner admits that defense counsel received a copy of the interview report after Ackerly's testimony, and the trial record reflects that. (Tr. Vol. 5, pp. 63-64)(ECF 6-6, PageID. 1538-39). Petitioner acknowledges that this statement made it clear that Scott Bartlett digitally placed forged signatures on various subscription agreements. Petitioner also acknowledges in her brief that Ackerly also made it clear that Mr. Bartlett was acting under the direction of Joel Wilson at the time. Petitioner further admits that Mr. Bartlett acknowledged later at trial that he in fact did apply the signatures to the Beverly Harry documents. The jury also received a curative instruction on the matter. (Tr. Vol. 8, pp. 139–40)(ECF 6-9, PageID. 2283-84).

Petitioner's *Brady* claim fails because the evidence concerning the signatures being forged by Mr. Bartlett was disclosed to petitioner during trial. *Brady* generally does not apply to the delayed disclosure of exculpatory information, but only to a complete failure by the prosecutor to disclose such

10

information. *See United States v. Davis,* 306 F. 3d 398, 421 (6th Cir. 2002)(internal

citations omitted).  If previously undisclosed evidence is disclosed during trial, no

*Brady* violation occurs unless the defendant is prejudiced by its nondisclosure.

*United States v. Word*, 806 F. 2d 658, 665 (6th Cir. 1986); *See also United States*

*v. Benc*s, 28 F. 3d 555, 560-61 (6th Cir. 1994).  The Sixth Circuit noted that "[T]he

Supreme Court rejected the claim that the duty to disclose hinges on the usefulness

of the material to pretrial preparation.  Such a standard would 'necessarily

encompass incriminating evidence as well as exculpatory evidence, since

knowledge of the prosecutor's entire case would always be useful in planning the

defense.'" *Bencs,* 28 F. 3d at 560, n. 5 (quoting *Agurs,* 427 U.S. at 112, n. 20).

The mere fact that the defense theory may have been undermined by this

new evidence would not entitle petitioner to relief.  The Sixth Circuit has noted

that "[t]here is no rule that evidence must be excluded or a mistrial granted on the

basis that a defendant had committed himself to a theory which was undermined by

new evidence." *U.S. v. Atisha*, 804 F. 2d 920, 925 (6th Cir. 1986).  "There is

always a possibility that new evidence will be discovered, even if the defense was

structured around assurances made by the government." *Id.*  In the present case,

any claim that the late disclosure of these discovery materials may have precluded

defense counsel from adequate trial preparation is non-cognizable pursuant to

*Agurs. See Burns v. Lafler,* 328 F. Supp. 2d at 724 (citing *Bencs,* 28 F. 3d at 561).

Petitioner is not entitled to relief on her first claim since the forged signature issue was disclosed during trial and Petitioner so admitted.

### B. Claim # 2. The expert witness claim.

Petitioner next claims that the trial court erred in permitting Joseph Spiegel, an attorney and expert in the area of securities law, to testify as an expert witness because the prosecution's pre-trial summary of his proposed testimony was insufficient to meet the requirements for the admission of expert testimony under M.C.R. 6.201(A)(3). Petitioner also claims that Spiegel offered improper expert testimony concerning legal conclusions which went beyond the proper scope of expert testimony. Spiegel testified that a broker cannot make a material misrepresentation of facts or omit to state a material fact necessary for the facts to be stated to be true either orally or in writing. He further testified that it is not a defense where a broker raises a defense based solely upon a subscription agreement, without taking into consideration the oral or other representations the broker made to the client.

The Supreme Court has held that "'federal habeas corpus review does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)(quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *See also Williams v. White*, 183 F. Supp. 2d 969, 977 (E.D. Mich. 2002). The Sixth Circuit has held that "[i]n a federal habeas corpus proceeding, it is not the province of a federal appellate court to review the

decision of the state's highest court on purely state law." *Long v. Smith*, 663 F.2d 18, 23 (6th Cir. 1981).  Therefore, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

The admission of expert testimony in a state trial presents a question of state law which does not warrant federal habeas relief, unless the evidence violates due process or some other federal constitutional right. *See Keller v. Larkins,* 251 F. 3d 408, 419 (3rd Cir. 2001).  A federal district court cannot grant habeas relief on the admission of an expert witness' testimony in the absence of Supreme Court precedent which shows that the admission of that expert witness' testimony on a particular subject violates the federal constitution. *See Wilson v. Parker,* 515 F.3d 682, 705-06 (6th Cir. 2008).

To the extent that petitioner alleges that the prosecution's pre-trial summary of Spiegel's proposed testimony was inadequate to meet the requirements for the admission of expert testimony under M.C.R. 6.201(A)(3), this Court has already noted in Claim # 1, *infra*, that a prosecutor's violation of state discovery rules is non-cognizable in federal habeas review, because it is not a constitutional violation. *See Lorraine v. Coyle,* 291 F. 3d at 441.  In any event, the Michigan

Court of Appeals concluded that the prosecutor's written summary of Spiegel's proposed testimony sufficiently set out the substance of Mr. Spiegel's testimony, his opinion, and the bases for that opinion and thereby complied with the requirements of M.C.R. 6.201(A)(3). *People v. Dicken*, 2016 WL 146031, at * 3. Specifically, the Court of Appeals noted that Petitioner vigorously cross-examined Spiegel and that there is no indication that Petitioner was unable to question Spiegel because Spiegel did not understand the bases of Spiegel's opinion. *Id.* This Court must defer to the state appellate court's opinion that the pre-trial summary complied with Michigan law.

Petitioner also says that it was improper for Mr. Spiegel to testify concerning the meaning and scope of various federal and state statutes and regulations, because this amounted to improper opinion testimony on a conclusion of law.

Although the Federal Rules of Evidence prevents an expert witness from testifying that a defendant in a criminal case did or did not have the requisite mental state or condition which constitutes an element of the crime charged, see F.R.E. 704(b), there is no Supreme Court authority which precludes the admission of expert testimony on an ultimate issue as a matter of federal constitutional law. *See Hopp v. Burt,* No. 2007 WL 162248, * 9 (E.D. Mich. Jan. 16, 2007). "A state court does not violate federal law merely because it does not follow federal rules of procedure." *Scruggs v. Williams,* 903 F. 2d 1430, 1434 (11th Cir. 1990). The U.S.

14

Supreme Court's "authority to promulgate rules of procedure is limited to proceedings in federal court." *Id.* (citing to 18 U.S.C. §§ 3771, 3772). Any violation by the state trial court of F.R.E. 704(b) would not entitle petitioner to relief.

The Supreme Court has yet to hold that the federal constitution prohibits an expert from testifying about an ultimate issue to be resolved by the trier of fact. *Moses v. Payne*, 555 F.3d 742, 761 (9th Cir. 2009). In the absence of any Supreme Court caselaw to the contrary, the Michigan Court of Appeals' rejection of petitioner's claim that the expert improperly testified concerning the ultimate legal issues in this case would not entitle petitioner to habeas relief. *Id.*

Even if it was erroneous for the expert witness to testify as to the definitions of various federal and state statutes and regulations concerning securities law, any error would have been harmless, in light of the fact that the trial court gave the jury the proper instructions on the legal definitions of the crimes charged in this case both before and after trial. (Tr. Vol. 1, pp. 172-182, Tr. Vol. 8, pp. 129-39)(ECF 6-2, Page ID. 704-14, ECF 6-9, Page ID. 2273-83). *See U.S. v. Parris,* 243 F. 3d 286, 289 (6th Cir. 2001)(any error in permitting lay witnesses to give opinion testimony relating to the ultimate legal issue was harmless in prosecution for aiding or assisting in the preparation or presentation of false or fraudulent income tax returns; any prejudicial effect of testimony was overcome by accurate, thorough,

and clear instructions given to jury regarding the law); *Ware v. Wolfenbarger*, No. CIV. 2:07-CV-10964, 2008 WL 686265, at * 3 (E.D. Mich. Mar. 11, 2008)(any error to allow expert witnesses to testify as to the definitions of mental illness and insanity harmless where trial court gave the proper instructions on the legal definitions of insanity and mental illness).

Petitioner in the alternative argues that trial counsel was ineffective for failing to object to Mr. Spiegel offering testimony concerning the definitions of the various laws and regulations.

A criminal defendant must satisfy a two-part test to show that he or she was denied the effective assistance of counsel. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his or her defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Strickland,* 466 U.S. at 694. The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

The Michigan Court of Appeals concluded that Spiegel did not offer improper opinion testimony because he did not testify that petitioner was guilty of a crime, only that defendant acted negligently by failing to use due diligence on the limited partnership investment and by selling the investment to clients who could not afford the risk. *People v. Dicken*, 2016 WL 146031, at * 4.

The trial court and the Michigan Court of Appeals concluded that Spiegel's testimony was admissible. Because petitioner has failed to show a reasonable probability that Mr. Spiegel's expert testimony concerning the meaning and definitions of various statutes and laws would have been excluded had an objection been made, petitioner is not entitled to habeas relief on her ineffective assistance of counsel claim. *See Pillette v. Berghuis*, 630 F. Supp. 2d 791, 802 (E.D. Mich. 2009); *aff'd in part and rev'd in part on other grds,* 408 F. App'x. 873 (6th Cir. 2010); *cert. den.* 132 S. Ct. 125 (2011). Because the Michigan Court of Appeals considered and rejected petitioner's expert testimony claim, albeit it

under a plain error standard, petitioner is unable to show that she was prejudiced by counsel's failure to object to the admission of Spiegel's testimony. *See Campbell v. United States*, 266 F. Supp. 2d 587, 589 (E.D. Mich. 2003). Petitioner is not entitled to relief on her second claim.

### C. Claim # 3.  The right to present a defense claim.

Petitioner next contends that the trial judge violated her right to present a defense when he refused to allow defense counsel to play petitioner's entire seventy five minute tape recorded interview with state investigators with the Financial Industry Regulatory Authority [FINRA].  Petitioner claims that this tape recording would show that she cooperated with state investigators, so as to negate any criminal intent on her part.  Petitioner also claims that the statements that she made during the interview showed that she did not have the intent to defraud her victims.

The Michigan Court of Appeals rejected petitioner's claim:

Relevant evidence is generally admissible. MRE 402. However, relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. Defendant sought to admit the 75–minute recording of her interview with state investigators during an investigator's testimony in order to show that she cooperated with investigators. She also asserted that the evidence could support a conclusion that she lacked the intent to commit a crime at the time the alleged offenses occurred. The trial court expressed concern about confusion of the issues, and on that basis, denied defendant's request to play the entire recording. Although the

trial court added that defendant could play portions of the recording for impeachment purposes, defendant made no attempt to do so.

We conclude that the trial court did not abuse its discretion by denying defendant's request to admit the entire recording. The trial court's MRE 403 concerns were legitimate. Defendant's sole stated purpose for seeking to admit the recording was to show that she cooperated with investigators. However, the investigator testified that defendant cooperated and provided written information upon request. Therefore, the trial court had a principled basis for its conclusion that the interview was not necessary to show that defendant cooperated, and that considerations of undue delay, waste of time, or needless presentation of cumulative evidence justified exclusion of the entire 75–minute recorded interview. The trial court permitted defendant to play portions of the recording for impeachment purposes, but she chose not to do so. Accordingly, the trial court did not abuse its discretion by denying defendant's request to play the entire recording.

*People v. Dicken*, 2016 WL 146031, at * 4.

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he or she also has the right to present his or her own witnesses to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *See also Crane v. Kentucky,* 476 U.S. 683, 690 (1986)("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'")(internal citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged,

or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996).  The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane,* 476 U.S. at 689.  The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)).

Under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect. Instead, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *See Rockwell v. Yukins,* 341 F. 3d 507, 511-12 (6th Cir. 2003).

The Michigan Court of Appeals upheld the trial judge's decision to deny petitioner's request to play the entire taped interview because the judge believed that the tape would be more prejudicial than probative and could potentially confuse the issues. Although the federal constitution "prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established

rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina,* 547 U.S. 319, 326 (2006)(citing Fed. Rule Evid. 403; Uniform Rule of Evid. 45 (1953); ALI, Model Code of Evidence Rule 303 (1942); 3 J. Wigmore, Evidence §§ 1863, 1904 (1904)).

It was not unreasonable for the state trial court to exclude, as more prejudicial than probative, the playing of the entire 75-minute tape recording. The purpose of playing the entire tape recording was to show that petitioner was cooperative. Petitioner was not prevented from presenting evidence that she cooperated with the authorities and that she lacked the intent to defraud her victims. The investigator admitted at trial that petitioner had been cooperative during the interview and had provided a written statement. Petitioner testified on her own behalf at trial and denied intending to defraud the victims. The contents of petitioner's tape recorded interview would have been cumulative to other evidence presented at trial that petitioner did not intend to defraud the victims and that she had cooperated with authorities; the exclusion of this evidence did not violate petitioner's her right to present a defense. *See Washington v. Renico*, 455 F.3d 722, 728-29 (6th Cir. 2006).

Finally, the trial judge did not prevent the defense from playing portions of the taped interview for impeachment purposes, but defense counsel chose not to do so. Petitioner cannot convert a tactical decision not to introduce evidence into a constitutional violation of the right to present evidence generally. *See Rodriguez v. Zavaras*, 42 F. Supp. 2d 1059, 1150 (D. Colo. 1999); *See also State v. Flood,* 219 S.W. 3d 307, 318 (Tenn. 2007)("Generally, the right to present a defense is not denied when a defendant does not pursue a line of questioning during cross-examination").

To the extent that petitioner claims that counsel was ineffective for failing to introduce petitioner's testimony from FINRA, she would not be entitled to relief. Petitioner's testimony at FINRA was identical to her trial testimony, in which she denied any intent to defraud her victims. Petitioner was not prejudiced by counsel's failure to introduce petitioner's testimony from FINRA because it was cumulative of other evidence in support of petitioner's claim that she did not intend to defraud the victims. *Wong v. Belmontes,* 558 U.S. at 22-23; *See also United States v. Pierce*, 62 F. 3d 818, 833 (6th Cir. 1995); *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 607 (E.D. Mich. 2001). Because the jury was "well acquainted" with evidence that would have supported petitioner's claim that she did not intend to defraud the victims and that she had cooperated with the investigation, additional evidence in support of petitioner's defense "would have offered an

insignificant benefit, if any at all." *Wong,* 558 U.S. at 23.   Accordingly, petitioner

is not entitled to habeas relief on her third claim.

### D. Claim # 4. The prosecutorial misconduct claim.

Petitioner finally alleges that the prosecutor committed misconduct in

opening argument by misleading the jury into thinking that a durable power of

attorney held by a relative of one of petitioner's elderly victims was equivalent to a

guardianship and implying that it was improper for petitioner to deal directly with

the elderly victim.

Petitioner claims that the following remarks by the prosecutor were

improper:

> You'll hear in this case an incident involving Beverly Harry. [the victim]. Ms. Harry was going to invest with Diversified and only agreed to do that. And then she gets into a car accident where she, after being hospitalized for 2 months, she's in a nursing home.

> That doesn't deter Ms. Dicken.

> Ms. Dicken knows that Ms. Harry has a Power of Attorney for her financial affairs. Ms. Dicken meets with Ms. Harry and the Power of Attorney to discuss this investment.

> They're not satisfied. Not sure. So they tell Ms. Dicken that they are going to be out of state back in December of 2011. They set up a meeting afterwards to make a final decision.

> While the Power of Attorney is out of state, Ms. Dicken goes to the nursing home where Ms. Harry is and consummates the deal for $54,000.

(Tr. Vol. 1, pp. 192-93)(ECF 6-2, PageID. 724-25).

The Michigan Court of Appeals rejected petitioner's claim:

> The prosecutor did not misrepresent the relative's legal status or authority in these remarks. Rather, the prosecutor accurately represented that the relative had a power of attorney that gave him authority over the victim's financial affairs. The prosecutor's remarks did not indicate that the victim lacked the ability to act on her own behalf. Accordingly, there was no plain error.
>
> Furthermore, defendant has not demonstrated a plain error associated with the relative's testimony. The scope of the relative's authority, as well as the victim's ability to act on her own behalf, was fully explored during the relative's testimony. The witness testified that he held a power of attorney for the victim, but he never asserted that he was the victim's guardian or that the victim lacked the authority or ability to make her own financial decisions. A fair reading of the witness's testimony as a whole reveals that the witness felt a responsibility toward his elderly cousin to look out for her best interests, but he never testified that she had been adjudged legally incapacitated or that he was required to make financial decisions for her. The prosecutor did not state or imply that the power of attorney prevented the victim from making her own financial decisions. Accordingly, we find no error, plain or otherwise, associated with either the witness's testimony or the prosecutor's arguments relating to that testimony. Further, an attorney who testified for defendant stated that he reviewed the power of attorney, and he determined that it did not stop the elderly victim from making her own financial decisions. The testimony of the defense witness further protected defendant's substantial rights in connection with this issue. Therefore, we reject this claim of error.

*People v. Dicken*, 2016 WL 146031, at * 5.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments

will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45. To obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his or her prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48 (2012)(quoting *Harrington*, 562 U.S. at 103).

Misrepresenting facts in evidence by a prosecutor can amount to substantial error because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer,* 228 F. 3d 689, 700 (6th Cir. 2000)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 646 (1974)). Likewise, it is improper for a prosecutor during opening or closing arguments to bring to the jury any purported facts which have not been, or will not be, introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209 F. 3d 486,

535 (6th Cir. 2000). However, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Id.*

In the present case, the prosecutor's remarks were not improper because they were based on reasonable inferences from the evidence presented at trial. The prosecutor did not suggest in his opening arguments that the victim was incapable of making her own decisions. Rather, the prosecutor accurately noted the relative's legal status or authority--that the relative had a power of attorney over the victim's financial affairs and that while the relative was out of town, petitioner went to the nursing home to finalize the deal.

Finally, any prosecutorial misconduct in attempting to inject facts that had not been introduced into evidence was also ameliorated by the trial court's instruction that the lawyers' comments and statements were not evidence. (Tr. Vol. 1, p. 183, Tr. Vol. 8, p. 141)(ECF 6-2, Page ID. 715, ECF 6-9, Page ID. 2285). *See Hamblin v. Mitchell*, 354 F. 3d 482, 495 (6th Cir. 2003).

In the alternative, petitioner argues that trial counsel was ineffective for failing to properly object to the alleged misconduct. It appears that trial counsel did move for a judgment of acquittal in the trial court based in part on the alleged misconduct, so counsel may have attempted to preserve this claim. In any event, assuming that counsel did not properly preserve petitioner's prosecutorial misconduct claim, she would nonetheless not be entitled to relief on any related

ineffective assistance of counsel claim.  To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his or her trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different.  *Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001).  The prosecutor's remarks did not deprive petitioner of a fundamentally fair trial; she cannot show that she was prejudiced by counsel's failure to object. *Slagle v. Bagley,* 457 F. 3d 501, 528 (6th Cir. 2006).  Petitioner is not entitled to relief on her fourth claim.

### IV. Conclusion

For the reasons discussed, state court adjudication of the petitioner's claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.  Nor did the state court adjudication result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This Court concludes that the petitioner is not entitled to federal habeas relief on the claims contained in his petition.

In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists

could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

This Court denies a certificate of appealability because reasonable jurists would not find this Court's assessment of the claims to be debatable or wrong. *See Slack v. McDaniel*, 529 U.S. at 484.

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that:

(1) the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

(2) A certificate of appealability is **DENIED.**

s/Denise Page Hood
DENISE PAGE HOOD
United States District Judge

Dated: December 9, 2019